1

2

3

4

5              UNITED STATES DISTRICT COURT

6              EASTERN DISTRICT OF WASHINGTON

7   MICHAEL A. TAYLOR,

8                          Plaintiff,          NO:  11-CV-0170-TOR

9        v.                                    ORDER GRANTING IN PART AND
                                               DENYING IN PART DEFENDANTS'
                                               MOTION FOR SUMMARY
10  CITY OF CHENEY; ALLAN                      JUDGMENT
    GAINER and JANE DOE GAINER

11
                           Defendants.
12

13       BEFORE THE COURT is Defendants' Motion for Summary Judgment

14  (ECF No. 25).  This matter was heard with oral argument on October 11, 2012.

15  Michael D. Kinkley and Scott M. Kinkley appeared on behalf of the Plaintiff.

16  Michael C. Bolasina appeared on behalf of Defendants.  The Court has reviewed

17  the relevant pleadings and supporting materials, and is fully informed.

18  //

19  //

20  //

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 1

1

BACKGROUND

2       Plaintiff brings a § 1983 claim against Defendants for violating his

3   Fourteenth Amendment right to procedural due process.  Plaintiff also alleges

4   violations of Washington's wage withholding statute (RCW 49.52) and

5   Washington's Open Meetings Act (RCW 42.30).  Presently before the Court is

6   Defendants' Motion for Summary Judgment on all three of Plaintiff's claims.

7

FACTS

8       Plaintiff was an unpaid reserve police officer in the mid-1990s in Southern

9   California.  Defendant's Statement of Material Facts, ECF No. 28 ("Def. SOF") at

10  ¶ 4.  He graduated from reserve police academy in California, but did not attend a

11  basic law enforcement academy.  *Id.*  In 1998, Plaintiff became an unpaid reserve

12  police officer for the City of Medical Lake in Washington, and attended the

13  Criminal Justice Training Commission's ("CJTC") Reserve Academy.[1]  *Id.* at ¶ 5.

14  He was then granted a "special" limited commission to serve as a fulltime police

15  officer in Medical Lake when the city was short-handed after September 11, 2001.

16  *Id.* at ¶ 6.  Plaintiff was given the authority to serve as a police officer within city

17  limits, however, he was not certified as a peace officer by the CJTC.  *Id.*  In 2002,

18

19  _____
    [1] The CJTC is the executive agency responsible for training and certifying peace

20  officers in Washington State. Def. SOF ¶ 1.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 2

Plaintiff graduated from the CJTC's Equivalency Academy,[2] and was then

certified as a fulltime peace officer by the CJTC. *Id*. at ¶ 7. At this time, he signed

a form certifying that he met the training requirements to become a peace officer.

Sale Decl., ECF No. 32-1, Ex. C. The form also included a disclaimer that his

certification could be revoked or denied if the certification was previously issued

due to an administrative error by the CJTC. *Id*. Taylor testified that he

understands now that he would only have qualified for the Equivalency Academy

if he had attended CJTC's Basic Law Enforcement Academy ("Basic Academy")

or the equivalent academy in another state. Bolasina Decl., ECF No. 29-1 at

65:15-66:9.

    In 2003, Plaintiff was hired as an unpaid reserve police officer by the City of

Cheney's ("Cheney") former chief of police Greg Lopes. Def. SOF at ¶ 11. In

2005, he was hired as a lateral fulltime police officer by new chief of police Jeff

Sale ("Chief Sale") based on a mutual understanding that he was certified as a

fulltime peace officer in Washington.[3] *Id*. at ¶ 12, 15. Plaintiff testified that he

_____

[2] The purpose of the Equivalency Academy is to educate out of state officers with

Washington's laws. Def. SOF ¶ 2.

[3] Despite Plaintiff's testimony that he did apply for a lateral position, he heavily

disputes that he was hired as a lateral police officer. Plaintiff contends that due to

an administrative error by the CJTC he was listed as a lateral hire instead of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 3

applied for a lateral position, and that he represented he was already certified as a peace officer in his application for that position. Bolasina Decl., ECF No. 29-1 at 89:9-22. Based on documentation issued to Plaintiff by the CJTC that he was certified as a fulltime peace officer, Chief Sale assumed that Plaintiff had graduated from the CJTC's Basic Academy or equivalent in another state. Def. SOF at ¶ 15. Cheney paid for Plaintiff to attend the Equivalency Academy and in October 2005 [4] he began as a fulltime police officer in Cheney. *Id*. at ¶ 17.

In the spring of 2008, Captain Bill Bender of the Cheney Police Department reviewed Taylor's personnel file after conducting an investigation into alleged misconduct by Plaintiff during two traffic stops. *Id*. at ¶ 18. Captain Bender noticed that Plaintiff's file lacked documentation that he attended the Basic Academy in Washington or the equivalent in another state. *Id*. He contacted the CJTC for clarification, and the CJTC conducted its own investigation. *Id*. On June 30, 2008, Plaintiff was placed on administrative leave while his certification status

---

"properly" as a police trainee which he argues is the position he applied for. Plaintiff's Response to Defendant's Statement of Facts, ECF No. 42 ("Pl. Response") at ¶ 12, 17.

[4] Taylor had previously graduated from the Equivalency Academy in Medical Lake but he was required to attend again because more than 24 months had lapsed since he previously served as a fulltime police officer. Def. SOF at ¶ 17.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 4

was investigated. Sale Decl., ECF No. 32-2, Ex. G.  Chief Sale met with Plaintiff

and explained the discrepancy in his certification.  Def. SOF at ¶ 18.  Plaintiff was

unable to provide documentation supporting his certification.  *Id*.  On July 10,

2008, the CJTC issued a letter to Chief Sale informing him that Plaintiff was

incorrectly certified as a fulltime peace officer and should not have been sent to the

Equivalency Academy because he never graduated from the Basic Academy, and

this issue could only be corrected if Plaintiff successfully completed Basic

Academy.  Sale Decl., ECF No. 32-2, Ex. I.

In order to send Plaintiff to the Basic Academy, Cheney would have been

required to pay the cost of attendance in addition to Plaintiff's salary, benefits, and

living expenses for five months; as well as keeping his job open and unfilled

during this time.  Def. SOF at ¶ 22.  Chief Sale and Arlene Fisher, Cheney's City

Manager, decided they were unwilling to incur the expense to send Plaintiff to the

Academy when he was hired with the understanding that he was already fully

certified.  *Id*. at ¶ 23, 35.  On July 22, 2008, Cheney Mayor Allan Gainer sent

Plaintiff written notice of a "pre-disciplinary/termination hearing" notifying

Plaintiff that Cheney was considering termination based on his lack of certification

as a fulltime peace officer, as well as possible suspension for unprofessional

behavior on several traffic stops.  Fisher Decl., ECF No. 30-2.  He was informed

that he had the right to attend the meeting with an attorney and he was given the

opportunity to provide a written response at any time. *Id.* On July 31, 2008, Plaintiff attended the "pre-disciplinary/termination hearing" with his attorney; and Ms. Fisher and Mayor Gainer appeared on behalf of Cheney. Fisher Decl., ECF No. 30-3. During the hearing Plaintiff affirmed that he did not graduate from the Basic Academy in Washington. *Id.* After this hearing Mayor Gainer terminated Plaintiff's employment with the City of Cheney, effective August 4, 2008. *Id.*

Plaintiff was a member of the civil service, and was therefore entitled to a hearing to determine whether his termination was for good cause. Wash. Rev. Code 41.12.090.[5] Under Cheney Civil Service Rule 5.03, a petition for hearing must:

> be in writing, signed by the petitioner, giving the mailing address, the ruling from which the petition appeals, and in plain language and detail, the facts and reasons upon which the petition is based. A hearing on the merits may be denied if the petition fails to state specific facts and reasons or if, in the opinion of the Commission, the facts or reasons stated, if true, would not entitle the petitioner to any relief.

---

[5] Plaintiff contends "the lynch pin of this case is whether, at the time [he] was hired, was pre-certification a requirement of the job description." ECF No. 43 at 2. Thus, Plaintiff argues that the sole question is whether his discharge was in "good faith for cause." ECF No. 43 at 10. That may be an issue considered by the Civil Service Commission, but it has no bearing on this cause of action under § 1983 which only examines whether Plaintiff was afforded procedural due process.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 6

Showalter Decl., ECF No. 31-1.  On August 14, 2008, Plaintiff's attorney sent a "demand for investigation" to Defendants requesting, among other things, an investigation of whether the termination of his employment was for good cause. Showalter Decl., ECF No. 31-2.  According to Defendants, Plaintiff's letter did not request a hearing, or state any facts or reasons supporting the request, as required under the Cheney Civil Service Rules.  ECF No. 26 at 8.  On September 3, 2008, Diane Showalter, secretary for the Cheney Civil Service Commission ("Commission"), sent a response letter to Plaintiff and his attorney indicating that "the City [was] construing [Plaintiff's demand for investigation] as a petition for hearing" and asking him to supplement the demand for investigation with answers to very detailed questions within ten days of receiving the letter.[6]  Showalter Decl., ECF No. 31-3.  Plaintiff maintains that he did respond with a letter dated September 9, 2008,[7] indicating that the "facts and circumstances" of his demand

---

[6] The letter also indicates that the decision to hold an actual hearing is in the discretion of the Civil Service Commission.

[7] In their reply brief, Defendants contend they have never seen this letter before now.  ECF No. 45 at 2.  It was not part of Plaintiff's initial disclosures, nor was it produced in response to a request for production asking for all correspondence sent to or received from the Commission.  Defendants ask that it be excluded from

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 7

1    for investigation "is the termination of his employment as detailed in the letter

2    decision from the City of Cheney."  Kinkley Decl., ECF No. 41-2.

3           On October 16, 2008, Showalter sent another letter to Plaintiff indicating

4    that she did not receive a response to her previous letter and extending the deadline

5    by an additional six days for Plaintiff to respond before taking the information to

6    the Civil Service Commission "for a decision on how they want to proceed."

7    Showalter Decl., ECF No. 31-4.  According to Defendants, neither Plaintiff nor his

8    attorney responded to either letter.  ECF No. 26 at 9.  On December 8, 2008, the

9    Commission held a meeting in the mayor's conference room and the minutes

10   indicated that "[w]e sent [Plaintiff] a letter notifying him of this meeting as he had

11   requested a hearing.  We did not receive a response from either [Plaintiff] or his

12   attorney.  The Commissioners discussed the issue and recommended that due to

13   lack of response the Commission deem the issue closed."[8]  Showalter Decl., ECF

14   No. 31-5.

_____

15   consideration on the basis that it was improperly withheld during discovery.  ECF

16   No. 45 at 11.  As indicated in the discussion below, whether Plaintiff adequately

17   responded to the additional request for information is immaterial to an analysis of

18   whether the process afforded to Plaintiff was constitutionally adequate.

19   [8] The Court finds no evidence in the record that Plaintiff was ever "notified of the

20   meeting" on December 8, 2008.  Defendants' counsel conceded at oral argument

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 8

SUMMARY JUDGMENT STANDARD

The court may grant summary judgment in favor of a moving party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling on a motion for summary judgment, the court must only consider admissible evidence.  *Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir. 2002).  The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law.  *Id*. at 248.  Further, a material fact is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party.  *Id*.  The court views the facts, and all rational

---

that this was an erroneous statement in the minutes; no letter was actually sent to Plaintiff notifying him of the December 8th hearing.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 9

inferences therefrom, in the light most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 327, 378 (2007).

DISCUSSION

**I.    Section 1983 Claim**

A cause of action pursuant to 42 U.S.C. § 1983 may be maintained "against any person acting under the color of law who deprives another 'of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Southern Cal. Gas Co., v. City of Santa Ana*, 336 F.3d 885 (9th Cir. 2003) (citing 42 U.S.C. § 1983).  The rights guaranteed by § 1983 are "liberally and beneficently construed." *Dennis v. Higgins*, 498 U.S. 439, 443 (1991).  The Supreme Court has held that local governments are "persons" who may be subject to suits under § 1983.  *Monell v. Department of Social Servs.*, 436 U.S. 658, 690 (1978).  However, a municipality may only be held liable for constitutional violations resulting from actions undertaken pursuant to an "official municipal policy." *Id*. at 691.

Thus, in order to prevail on a § 1983 claim against a municipal government, a plaintiff must prove the following elements by a preponderance of the evidence: (1) action by an employee or official under color of law; (2) deprivation of a right guaranteed by the U.S. Constitution or a federal statute; and (3) action pursuant to an "official municipal policy." *Id*. at 690-692.  In this case, Plaintiff has alleged

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 10

violations of his rights to procedural due process under the Fourteenth

Amendment.[9]  For the purposes of this motion Defendants argue (1) Plaintiff was

not deprived of a right guaranteed by the Fourteenth Amendment, and (2) Plaintiff

has produced no evidence that his termination was pursuant to official municipal

policy.

**A. Procedural Due Process**

The Fourteenth Amendment provides that no State shall "deprive any person

of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV,

§1.  It is well-settled that a public employee with a constitutionally-protected

interest in his or her continued employment is entitled to due process prior to being

terminated.  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).

Generally, due process requires that an employee facing termination receive "oral

or written notice of the charges against him, an explanation of the employer's

evidence, and an opportunity to present his side of the story."  *Id.* at 546.  As the

Supreme Court emphasized in *Loudermill*, an employee's opportunity to be heard

must occur *before* the employee is terminated.  *Id*. (emphasis added).

---

[9] At oral argument Plaintiff clarified that he did not intend to pursue a substantive

due process claim.

Furthermore, the Court stated that the Due Process Clause requires a hearing "at a meaningful time" which indicates that "[a]t some point, a delay in the post-termination hearing would become a constitutional violation." *Id*. at 547 (internal citations omitted); *see also Gilbert v. Homar*, 520 U.S. 924, 935-36 (1997) (remanding for consideration of whether employer violated due process by failing to provide a prompt post-suspension hearing). Moreover, the Court rejected the argument that it need not consider whether post-termination procedures were adequate because, in part, "the existence of post-termination procedures is relevant to the necessary scope of pretermination procedures." *Loudermill*, 470 U.S. at 547 n.12. The Court specifically held that due process required a pre-termination opportunity to respond "coupled with" post-termination administrative procedures under the applicable state statute. *Id*. at 547-48. Following this line of reasoning, the Ninth Circuit has held that the court "*must* also independently assess the adequacy of the post-termination proceedings. For not only is such an assessment usually required to determine the necessary scope of pre-termination procedures, but the inadequacy of post-termination process may itself by a source of a distinct due process violation." *Clements v. Airport Authority of Washoe County*, 69 F.3d 321, 332 (9th Cir. 1995) (emphasis added).

The parties in this case do not dispute that the Plaintiff had a property interest in his continued employment or that his property interest was deprived

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 12

when he was terminated.  Plaintiff does not claim a violation of his pre-termination

due process rights, and acknowledges that he was afforded a constitutionally

adequate *Loudermill* hearing before he was terminated.  ECF No. 43 at 4.  Thus,

the only question remaining for the Court is whether Plaintiff's procedural due

process rights were violated when he failed to receive a post-termination hearing

before the Civil Service Commission.

As an initial matter the Court rejects Defendants' argument that Plaintiff's

procedural due process claim should be summarily dismissed solely based on

Defendants' compliance with the *Loudermill* by providing an adequate pre-

termination hearing.  ECF No. 26 at 7.  This is a blatant misstatement of the law

under *Loudermill* where the Supreme Court recognized the importance of post-

termination procedures when evaluating procedural due process afforded to an

employee, and noted that defects in a post-termination hearing could be

constitutional violations.  *See Loudermill*, 470 U.S. at 547-48; *see also Bignall v.*

*North Idaho College*, 538 F.2d 243, 246 (9th Cir. 1976) (hearings regarding a

termination decision should be granted "at a meaningful time and in a meaningful

manner.").  Rather, as noted above, under Ninth Circuit case law the Court *must*

independently evaluate the post-termination process for due process violations. See

*Clements*, 69 F.3d at 332.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 13

The Court also rejects Defendants' argument that Plaintiff cannot claim a constitutional violation for failure to receive a post-termination hearing in front of the Commission because he failed to respond to several requests for additional information from the Commission's Secretary.  ECF No. 26 at 7-11.  Plaintiff's first letter demanded an investigation and was in fact construed as a request for a hearing.  ECF No. 31-3; *see also* Wash. Rev. Code 41.12.090.  It matters not whether Defendants received Plaintiff's second letter dated September 9, 2008, because Plaintiff's claim is that the denial of his demanded post-termination hearing violated his *federal* due process rights.  Furthermore, the Commission minutes erroneously reflect that Plaintiff was notified of that very hearing and he did not respond.

Defendants' last argument is that any failure by Defendants to provide an appeal hearing is not a protected constitutional right because the Constitution does not guarantee that employers will follow their own internal rules regarding procedures for termination.  *See Williams v. City of Seattle*, 607 F.Supp. 714, 720 (W.D. Wash. 1985) ("[t]he process constitutionally due [Plaintiff] prior to deprivation of that property interest is determined not by the procedures set forth in the SPD Manual, but rather by the requirements of the Due Process Clause."); *Harris v. Birmingham Bd. of Educ.*, 817 F.2d 1525, 1528 (11th Cir. 1987) ("we emphasize that the violation of a state statute outlining procedures does not

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 14

1    necessarily equate to a due process violation under the federal constitution.").

2    Thus, Defendants contend that even if they failed to follow their own rules, this

3    does not equate to a "prima facie" violation of procedural due process.  Rather,

4    Defendants argue that in order to determine whether due process was violated, the

5    Court must analyze the process received under federal law.  *Id.*

6        Plaintiff responds that his constitutional due process rights should mirror

7    those prescribed under Washington law, which include the right to a post-

8    termination hearing in front of the Commission when timely requested by a civil

9    service employee.  Wash. Rev. Code 41.12.090 (a discharged civil service

10   employee "may within ten days from the time of his or her [discharge] file with the

11   commission a written demand for an investigation, whereupon the commission

12   shall conduct such investigation.").  The Court rejects Plaintiff's unsupported

13   argument that the Court should unilaterally adopt the process afforded under the

14   Washington state statute as defining the scope of process due to Plaintiff under

15   *federal* law.  Rather, the Court must analyze the process received under federal law

16   to determine if Plaintiff had a federal due process right to a post-termination

17   hearing.[10]

_____

18   [10] Generally, the amount of process due in a particular situation depends upon a

19   balancing of the competing interests at stake.  *Mathews v. Eldridge*, 424 U.S. 319,

20   335 (1976).  Specifically, a court must balance, "[f]irst, the private interest that will

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 15

Defendants fail to follow their own reasoning in their motion for summary judgment. They do not cite the *Mathews v. Eldridge* balancing test, nor do they make any attempt to weigh the facts of this case under that standard. They make no attempt to establish an absence of material facts as to whether the lack of a post-deprivation hearing was a violation of Plaintiff's federal due process rights. Instead, Defendants rely exclusively on the erroneous argument that no post-deprivation procedural due process was due Plaintiff as a matter of federal law. The Court finds that Defendants failed to sustain their burden to show the lack of any genuine issues of material fact regarding whether the failure of the Commission to provide a post-termination hearing was a deprivation of Plaintiff's *federal* procedural due process rights.

**B. Municipal Liability**

A municipal entity may only be held liable under 42 U.S.C. § 1983 for constitutional violations resulting from actions undertaken pursuant to an "official municipal policy." *Monell*, 436 U.S. at 691. The Ninth Circuit recognizes four categories of "official municipal policy" sufficient to establish municipal liability

be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest." *Id.*

under *Monell*: (1) action pursuant to an express policy or longstanding practice or custom; (2) action by a final policymaker acting in his or her official policymaking capacity; (3) ratification of an employee's action by a final policymaker; and (4) a failure to adequately train employees with deliberate indifference to the consequences. *Christie v. Iopa*, 176 F.3d 1231, 1235-40 (9th Cir. 1999). A plaintiff must also establish a direct causal link between the municipal policy and the alleged constitutional deprivation. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).

Defendants argue Plaintiff's § 1983 claim fails because he is unable to prove that his termination was the result of any identifiable policy or custom of the Defendant. ECF No. 26 at 15. All of Defendants' arguments focus solely on the termination itself as an isolated and unique situation that Defendants have never encountered before; namely, discovering several years after hiring an employee that the employee lacked the minimum qualifications for the job. *See Trevino*, 99 F.3d at 918 (a policy or custom should not be based on "isolated or sporadic incidents; it must be founded on practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.").

As an initial matter, Plaintiff does not dispute that the pre-termination hearing he was afforded complied with the due process requirements of

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 17

*Loudermill*.  Therefore, all of Defendants' arguments regarding the policy and practices of the Defendants' decision to terminate the Plaintiff's employment are essentially moot.  The only issue remaining is whether the actions by the Civil Service Commission and its Secretary Ms. Showalter, were taken pursuant to a longstanding policy or custom of the Defendants.  Defendants' sole mention of this discrete issue is one conclusory statement made in their reply brief that Plaintiff "failed to establish any unconstitutional policy or practice in his not receiving a Commission hearing."  ECF No. 45 at 8-9.  Defendants offer no legal or factual analysis in support of this bare assertion.  Moreover, Defendants fail to challenge alternate categories under which Plaintiff could establish municipal liability, including: action by a final policymaker acting in his or her official policymaking capacity, and ratification of an employee's action by a final policymaker.  *See Christie*, 176 F.3d at 1235-40.  The Court is not satisfied with Plaintiff's lack of responsive briefing on this point.  Yet, the Court finds that Defendants have failed to meet their burden to establish a complete absence of genuine issues of material fact as to whether the events surrounding the denial of the post-termination Commission hearing were pursuant to official policy and custom of Defendants.

Last, Defendant Allan Gainer argues that he cannot be liable because Plaintiff has failed to establish that he had anything to do with the operations or decision of the Commission.  The only evidence offered by Plaintiff is a mention

by counsel during oral argument that the letter sent by Ms. Showalter to Plaintiff asking for more information so the Commission could "investigate the matter and otherwise decide how to proceed," was on City of Cheney letterhead indicating it was from the "Office of the Mayor Allan Gainer."  Showalter Decl., ECF No. 31-3. That said, while the record before the Court indicates that Mayor Gainer was heavily involved in the decision to terminate Plaintiff's employment, the Court finds absolutely no evidence that Mayor Gainer had any personal involvement in the post-termination hearing process.  Therefore, Allan Gainer and Jane Doe Gainer are dismissed from this action.

For the foregoing reasons, the Court finds that the City of Cheney failed to establish the absence of genuine issues of material fact as to whether the failure to provide a post-termination hearing was a violation of Plaintiff's Fourteenth Amendment procedural due process rights.  Summary judgment on Plaintiff's § 1983 claim is denied.

**II.      Unpaid Wages Claim (RCW 49.52)**

Under RCW 49.52.050(2) an employer is guilty of a misdemeanor if it "wilfully and with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is obligated to pay such employee by statute, ordinance, or contract."  Wash. Rev. Code § 49.52.050(2).  This statute is to be construed liberally to advance the intent of the

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 19

Legislature to protect employee wages and assure payment. *Schilling v. Radio Holdings, Inc.*, 136 Wash.2d 152, 159 (1998). The critical determination in these cases is whether non-payment is "wilfull," in other words, when it is the "result of knowing and intentional action by the employer, rather than a bona fide dispute as to the obligation of payment." *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1050 (9th Cir. 1995); *see also Schilling*, 136 Wash.2d at 161 (to qualify as "bona fide" dispute it must be "fairly debatable" as to whether an employment relationship exists or whether the wages must be paid). Washington courts have found that an employer does not willfully withhold wages under the meaning of this statute where he has a "bona fide belief that he is not obligated to pay them." *See e.g.*, *McAnulty v. Snohomish School Dist. No. 201*, 9 Wash. App. 834, 838 (Ct. App. 1973) (finding no evidence in the record that employer did not genuinely believe that employee was legitimately discharged and that wages could be properly discontinued).

Defendants argue that Plaintiff was timely paid all salary and benefits owed to him through his termination date, and the statute is not intended to cover future wages that would have been earned if he had not been terminated. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1202-1204 (9th Cir. 2002) (rejecting plaintiffs' claim for prospective wages pending a jury verdict and noting that RCW 49.52.050 has been applied when an employer withholds a "quantifiable and undisputed

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ~ 20

1    amount of accrued pay," but not when "there is a bona fide dispute as to whether

2    the employer is obligated to pay the amounts in question.").  Plaintiff does not

3    respond to Defendants' challenge.

4        Generally, the issue of whether the withholding of wages was "wilfull" is a

5    question of fact, however, if reasonable minds could reach but one conclusion from

6    those facts, the issue may be decided as a matter of law.  *Moore v. Blue Frog*

7    *Mobile, Inc.*, 153 Wash. App. 1, 8 (Ct. App. 2009).  Plaintiff identifies no specific

8    facts showing a genuine issue of material fact exists as to whether Defendants

9    knowingly and intentionally withheld wages.  On the contrary, the record before

10   the Court indicates that Defendants had a genuine belief that they were not

11   obligated to pay Plaintiff after his employment was terminated.  *See McAnulty*, 9

12   Wash. App. at 838.  Even when viewed in the light most favorable to Plaintiff, the

13   Court finds that a reasonable jury could only reach the conclusion that there was no

14   violation of RCW 49.52.050(2).  Summary judgment on this claim is granted.

15   **III.    Open Meetings Act Claim (RCW 42.30)**

16       Under the Washington's Open Meetings Act ("OPMA") "[a]ll meetings of a

17   governing body of a public agency shall be open and public and all persons shall

18   be permitted to attend any meeting of the governing body of a public agency…."

19   Wash. Rev. Code § 42.30.030.  The purpose of the OPMA is to ensure open

20   decision-making by public bodies, and courts apply its provisions liberally in order

to further this purpose. *Clark v. City of Lakewood*, 259 F.3d 996, 1012-13 (9th Cir. 2001). In order to avoid summary judgment on an OPMA claim, "plaintiff must produce evidence showing (1) members of a governing body (2) held a meeting of that body (3) whether that body took action in violation of OPMA, and (4) the members of that body had knowledge that the meeting violated the statute." *Eugster v. City of Spokane*, 118 Wash. App. 383, 424 (Ct. App. 2003).

Plaintiff alleges that Defendants violated the OPMA because the Commission meeting during which Plaintiff's termination was discussed was not held open to the public. *See* Wash. Rev. Code 42.30 *et seq.* Defendants contend that this allegation is false because the Commission meeting on December 8, 2008 was open to the public, and the time and place of the meeting was posted in compliance with state law and Commission policy. Def. SOF at ¶ 52. Minutes from the Commission meeting on this date show that Plaintiff's termination was briefly discussed, and "due to the lack of response" from the Plaintiff after requests for supplemental information "the Commission deem[ed] the issue closed." Showalter Decl., ECF No. 31-5.

Once again, Plaintiff produces no evidence to show a genuine issue of material fact as to whether the meeting on December 8, 2008 was open to the public. Defendants' counsel admitted at oral argument that Plaintiff was not notified that this meeting was taking place. However, the OPMA only addresses

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 22

the general requirement to hold a meeting open to the public, it does not impose the additional burden to ensure that interested parties are individually notified. Even in the light most favorable to the Plaintiff, the Court finds absolutely no evidence in the record that the meeting on December 8, 2008, was not open to the public, or that Plaintiff was not permitted to attend the meeting.  Summary judgment on this claim is granted.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment, ECF No. 25, is **GRANTED** as to the claim for Willful Withholding of Wages (section VI of the Complaint) and the claim for violation of Washington's OPMA (section VII of the Complaint); and **DENIED** as to the claim for violation of Civil Rights, 42 U.S.C. § 1983 (section V of the Complaint).

2. Defendants Allan Gainer and Jane Doe Gainer are **DISMISSED** from this action.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** this 31st day of October, 2012.

*s/ Thomas O. Rice*

THOMAS O. RICE
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT ~ 23